# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>MITEK SYSTEMS, INC., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A.,<br><br>   Defendants. | C.A. No. 14-617-GMS<br><br>JURY TRIAL DEMANDED |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., NCR CORPORATION and MITEK SYSTEMS, INC.,<br><br>   Defendants. | C.A. No. 14-1142-GMS<br><br>JURY TRIAL DEMANDED |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>CITIGROUP INC., CITIBANK, N.A., NCR CORPORATION and MITEK SYSTEMS, INC.,<br><br>   Defendants. | C.A. No. 14-1143-GMS<br><br>JURY TRIAL DEMANDED |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., FISERV, INC. and MITEK SYSTEMS, INC.,<br><br>   Defendants. | C.A. No. 14-1144-GMS<br><br>JURY TRIAL DEMANDED |

## **PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

| | |
|---|---|
| Richard C. Weinblatt #5080<br>Stamatios Stamoulis #4606<br>STAMOULIS & WEINBLATT LLC<br>Two Fox Point Centre<br>6 Denny Road, Suite 307<br>Wilmington, DE 19809<br>Telephone: (302) 999-1540<br>Facsimile: (302) 762-1688<br>weinblatt@swdelaw.com<br>stamoulis@swdelaw.com | *Of Counsel*:<br><br>Michael W. Shore<br>Alfonso Garcia Chan<br>Andrew M. Howard<br>Dustin R. Lo<br>**SHORE CHAN DEPUMPO LLP**<br>901 Main Street, Suite 3300<br>Dallas, TX 75202<br>Telephone: (214) 593-9110<br>Facsimile: (214) 593-9111<br>mshore@shorechan.com<br>achan@shorechan.com<br>ahoward@shorechan.com<br>dlo@shorechan.com<br><br>**ATTORNEYS FOR PLAINTIFF<br>ROTHSCHILD MOBILE IMAGING<br>INNOVATIONS, LLC** |

RMII[1] moves to dismiss the above-referenced cases under Federal Rules of Civil Procedure 12(h)(3) and 41(a)(2) without prejudice.

## I.   INTRODUCTION

RMII filed suit against Mitek[2] and various Banks[3] alleging infringement of U.S. Patent Nos. 7,450,163 (the "'163 patent"), 7,456,872 (the "'872 patent"), 7,991,792 (the "'792 patent"), and 7,995,118 (the "'118 patent") (collectively, the "patents-in-suit"). While the case was still in a "nascent stage" due to reassignment and pre-discovery pleadings, the Patent Trial and Appeal Board ("PTAB") instituted inter partes reviews ("IPR(s)") of the patents-in-suit. At the time of institution, this Court had made no substantive determinations regarding the merits of RMII's claims, the construction of the patents-in-suit, or the validity or infringement of the patents-in-suit, and had yet to preside over a single discovery dispute.

Upon institution, RMII immediately agreed to a stay. Ultimately, RMII survived 46 out of the 113 challenges to its claims at the PTAB, but each of the asserted claims in this case were found invalid as obvious. By virtue of Federal Circuit precedent, RMII's lawsuit and Defendants' counterclaims regarding the asserted claims are now moot, the Court is without subject matter jurisdiction to act, and all claims should be dismissed. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a [patent] claim is cancelled, the patentee loses any cause of action based upon that claim, and any pending litigation in which the claims are asserted becomes moot."). Accordingly, RMII requests that all claims and counterclaims in this lawsuit be dismissed without prejudice, and that each party bear their own costs and fees.

---

[1] "RMII" refers to Plaintiff Rothschild Mobile Imaging Innovations, LLC.
[2] "Mitek" refers to Defendant Mitek Systems, Inc.
[3] "Banks" refers to JPMorgan Chase & Co., JPMorgan Chase Bank, N.A, Bank of America Corporation, Bank of America, N.A, Citigroup Inc., Citibank, N.A., Wells Fargo & Company, and Wells Fargo Bank, N.A.

## II. STATEMENT OF FACTS

RMII filed this suit on May 16, 2014. (D.I. 1.)[4] Various defendants requested and received extensions of time to answer through August 15, 2014, ostensibly to discuss an in-person meeting of party principals regarding settlement. (D.I. 6, 10, 12.) After Mitek declined to meet, counsel for defendants withdrew on October 10, 2014. (D.I. 24.)

At that time, the defendants had not answered as a result of their motion to dismiss RMII's willfulness allegations. The defendants next moved in November of 2014 to sever the claims against the Banks, stay those claims, and transfer the remaining action to the Southern District of California. (D.I. 26.) A month later, the parties submitted their first proposed scheduling order. (D.I. 37.)

Defendants' motions to dismiss RMII's willfulness allegations on the basis that RMII did not plead pre-suit notice were granted on March 30, 2015. (D.I. 51.) Approximately one week later, the case was reassigned to this Court and the parties were ordered to submit a new scheduling order. On May 12, 2015, the parties submitted a proposed scheduling order.

Defendants answered on June 29, 2015 (D.I. 59, 60) and the parties filed amended pleadings through July 2015. In response to Mitek's initial disclosures that identified NCR Corporation ("NCR") and Fiserv, Inc. ("Fiserv") as licensees and sellers of Mitek technology, RMII added them to the suit on July 8, 2015. Case No. 1:14-cv-1142, D.I. 55; Case No. 1:14-cv-1143, D.I. 60; Case No. 1:14-cv-1144, D.I. 58. Neither NCR nor Fiserv ever answered RMII's complaints.

Between July 23 and August 6, 2015, the PTAB instituted four of Mitek's five IPRs. Regarding IPR2015-00620, the PTAB declined to institute an IPR, noting that it was "not persuaded, under 35 U.S.C. § 314(a), that Petitioner has demonstrated a reasonable likelihood that it would prevail in showing the unpatentability of any of the challenged ['792 patent]

---

[4] D.I. references herein refer to Case No. 1:14-cv-617 unless otherwise indicated.

claims." In IPR2015-621, the PTAB declined institution of claim 11 of the '792 patent, but instituted an IPR for claims 1-10. IPRs were instituted for all claims of the '163 patent and the '118 patent in IPR2015-00622 and IPR2015-00623, respectively. Finally, the PTAB declined to institute an IPR for claims 1-26 and 29-37 of the '872 patent, but granted an IPR for the remaining four claims in IPR2015-00624.

In the intervening period on July 29, 2016, the Court granted the defendants' motion to stay and sever. (D.I. 71.) In its order granting severance and a stay but declining transfer, the Court found that "this litigation is in a nascent stage. A trial date is set for April 2017 – nearly two years from now…. Litigation is still getting underway." *Id.* at n. 5. After the last IPR institution decision was decided, the parties filed a stipulation requesting a stay pending the IPRs "because (i) a stay will simplify the issues in the case, and (ii) discovery is not complete and the cases are still in a relatively early stage." (D.I. 73.) For that reason, the parties expressly agreed to reset the deadlines that had not yet occurred:

> deadlines for fact and expert discovery, claim construction and infringement and invalidity contentions, summary judgment, the filing of Plaintiff RMII's motion for reargument of the Court's August 3 Order severing and staying certain of the Defendants to the RMII Actions, RMII's response to Defendants' Counterclaims, and responses to any pending motions to dismiss not resolved through the August 3 Order.

*Id.* The cases were administratively closed on September 1, 2015. (D.I. 75.)

Ultimately, the IPRs resulted in invalidation for obviousness of each of the instituted claims. At the end of the day, RMII survived 46 out of 113 challenges to its claims and retained 35 claims. All of the claims asserted in RMII's initial infringement contentions were invalidated by PTAB.

The parties negotiated through August and September of 2016 regarding resolution of this case, but were ultimately unsuccessful. Mitek intends to move for entry of judgment of noninfringement—despite the mootness of the claims in this case and lack of any substantive briefing or discovery on the merits—while RMII contends dismissal is the appropriate

mechanism for resolution. As part of its attempt to avoid this motion practice, RMII offered Mitek and its customers and suppliers a covenant not to sue for the patents-in-suit, but the parties could not come to an agreement.

### III.   ARGUMENT

#### A. The Court no longer has jurisdiction because RMII's asserted claims are moot and this case should be dismissed.

Federal Rule of Civil Procedure 12(h)(3) requires "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." "The objection that a federal court lacks subject-matter jurisdiction … may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

While the Court originally had subject-matter jurisdiction in this case under 28 U.S.C. § 1331 and 1338(a), that jurisdiction is not unlimited. The "jurisdictional doctrine of mootness derives from Article III section 2 of the U.S. Constitution, which limits a federal court's jurisdiction to live cases or controversies." *Target Training Int'l, Ltd. v. Extended Disc. N. Am., Inc.*, 645 Fed. Appx. 1018, 1022 (Fed. Cir. 2016). A justiciable controversy "must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or **moot**." *Id.* (emphasis added) (quoting *Aetna Life*, 300 U.S. at 240). "A moot case must, therefore, be dismissed." *Id.* (citing *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004)).

Where claims are cancelled as a result of a co-pending action at the PTAB, a district court should dismiss on the basis of mootness. *Id.*; *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a [patent] claim is cancelled, the patentee loses any cause of action based upon that claim, and any pending litigation in which

4

the claims are asserted becomes **moot**.") (emphasis added); *Nexans Inc. v. Belden Inc.*, No. CV 12-1491-SLR-SRF, 2014 WL 1232218 (D. Del. Mar. 12, 2014) ("When a claim is cancelled in a parallel proceeding before the PTO, 'the patentee loses any cause of action based on that claim, and **any pending litigation** in which the claims are asserted becomes **moot**.'") (emphasis added). Simply put, the "Federal Circuit has established that dismissal is an appropriate procedural mechanism by which to dispose of litigation rendered moot by reexamination proceedings." *Id.* (citing *Fresenius*, 721 F.3d at 1347; *Slip Track*, 195 F.3d at 1340).

Similarly, the claims of all parties in this case are now moot by virtue of the IPRs that invalidated each asserted claim. There is no dispute of "definite and concrete" character; rather, the only claims at issue in this case are now moot by virtue of PTAB action. Because there is no jurisdiction, the Court "cannot decide the case on the merits. It has no authority to do so." *In re Orthopedic "Bone Screw" Products Liability Litig.*, 132 F.3d 152, 155 (3d Cir. 1997). The "disposition of such a case will … be without prejudice." *Id.* The same result should apply here, and all outstanding claims should be dismissed without prejudice.

### B. To the extent the Court finds that Mitek and the Bank's claims are not moot, it should exercise its discretion to decline declaratory judgment jurisdiction.

Federal Circuit law governs whether a case or controversy ripe for declaratory judgment exists in this action. *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1368 (Fed. Cir. 2007). The analysis is fact-specific, with the basic standard being whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). It is a "bedrock rule that a case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants—an objective standard that cannot be met by a purely subjective or speculative fear of future harm."

*SanDisk Corp. v. STMicroelectronic, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007). For the reasons stated above, Mitek and the Bank's counterclaims are moot and fail to show any substantial controversy. RMII also offered Mitek and its customers a covenant not to sue on the asserted patents, which would also extinguish any present controversy.

Additionally, Declaratory Judgment jurisdiction is not mandatory. Instead, "[t]he Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party, 28 U.S.C. § 2201(a), not that it must do so." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 136 (2007). Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co*., 515 U.S. 277, 286–88 (1995). To that end, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*.

The Court should exercise its discretion here to decline jurisdiction (to the extent it has jurisdiction) because to adjudicate Mitek and the Bank's request for a judgment of non-infringement would require providing an advisory opinion because the asserted claims were cancelled by the PTAB, meaning the claims no longer exist. To provide such an advisory opinion on non-existent patent claims would require substantive discovery and briefing to provide the Court with the facts necessary to make a decision on the merits. That course of action would be particularly wasteful to both the Court and the parties. The Court has no obligation (or jurisdiction) to entertain Mitek's request for judgment of non-infringement nor an obligation to allow discovery and summary judgment practice regarding claims that do not currently exist so that Mitek can obtain an advisory opinion.

**C. In the alternative, Federal Rule of Civil Procedure 41 requires dismissal without prejudice of Fiserv and NCR and permits dismissal without prejudice of Mitek and the Banks.**

A plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1). After an opposing party serves an answer, voluntary dismissal can be achieved under Federal Rule of Civil Procedure 41(a)(2) by court order on the plaintiff's request on terms approved by the court.

*1. RMII's claims against NCR and Fiserv are dismissed without prejudice.*

Neither NCR nor Fiserv served an answer or motion for summary judgment. As a result, Federal Rule of Civil Procedure 41(a)(1) provides that RMII's request herein to dismiss its claims against NCR and Fiserv without prejudice is self-operative without a court order.

*2. The Court should dismiss the claims against Mitek and the Banks without prejudice.*

A Rule 41(a)(2) motion should attempt to "secure substantial justice to both parties." *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-cv-646, 2015 WL 887935, at *4 (D. Del. Mar. 3, 2015). When considering the interests of the parties, "the court remains cognizant that the motion should be granted absent substantial prejudice to the defendant." *Id.* (internal citations omitted). "The possibility that a defendant will be subject to a subsequent lawsuit is **not** prejudicial." *Id.* (emphasis added) (citing *Reach & Assocs., P.C. v. Dencer*, C.A. No. 02–1355–JJF, 2004 WL 253487, at *1 (D. Del. Feb. 9, 2004); *Hayden v. Westfield Ins. Co.*, 586 Fed. Appx. 835, 842 (3d Cir. 2014) ("Rule 41 motions should be allowed unless [the] defendant will suffer some prejudice other than the mere prospect of a second lawsuit.")). In determining "substantial prejudice" the court should consider four factors:

> (a) any excessive and duplicative expense of a second litigation; (b) the effort and expense incurred by a defendant in preparing for trial; (c) the

7

extent to which the pending litigation has progressed; and (d) RMII's diligence in moving to dismiss.

*Id.* Each of these factors favors dismissal without prejudice.

First, there will be no excessive or duplicative expense of a second litigation. This litigation is still in a "nascent" stage and neither party disputes that little discovery has taken place and that no substantive briefing was filed. To the extent later litigation ever occurs, it will be either on previously unasserted claims, new claims that have been amended pursuant to reissue, or asserted claims that were vindicated on appeal. The former two types of claims would be subject to new discovery and claim construction proceedings, which would not be duplicated by this case given that none has occurred. To the extent RMII's claims are vindicated on appeal, any future litigation will be simplified by the estoppel provisions of IPR procedures that would prohibit defendants from raising any previously asserted invalidity defenses. This factor favors dismissal without prejudice.

The second and third factors both favor dismissal without prejudice because of the early stage of this case. There have been no preparations for trial; the case has been administratively closed pending the early results on the IPRs. Similarly, the parties have not even begun claim construction proceedings or even had a single discovery dispute. It cannot be faithfully argued that this litigation has substantively progressed.

The fourth factor also favors dismissal without prejudice. RMII stipulated to a stay of the cases pending the results of the IPRs. As soon as the IPRs were concluded, RMII and Mitek negotiated regarding dismissal of this case. As soon as those negotiations reached an impasse, RMII moved to dismiss.

The Court should grant RMII's motion to dismiss because there is **no** prejudice to defendants by doing so, let alone any "substantial prejudice." Mitek and the Banks elected to proceed in the PTAB rather than this Court and should not be heard to complain that because their efforts in that quasi-judicial forum were successful, that this Court should be required to

8

adopt its findings and then further entertain proceedings on a motion for entry of judgment of non-infringement.

Alternatively, dismissal with prejudice or a judgment of non-infringement would divest RMII of substantial rights and subject it to non-litigation prejudice. The Court held that RMII's case against the Banks was limited to Mitek instrumentalities (D.I. 71); any Mitek-independent instrumentalities used by the Banks are not in this case. Additionally, RMII has 35 valid claims of the patents-in-suit, which claims are now insulated from review on the basis of any prior art raised or that should have been raised in the IPRs, and a dismissal with prejudice would permit the Banks to infringe these 35 claims based on Mitek-independent instrumentalities, thus severely prejudicing RMII. When this prejudice is balanced against the lack of prejudice for defendants, dismissal without prejudice should be granted.

### IV. CONCLUSION

While this case was in its early stages, RMII agreed to stay the case pending four instituted IPRs. The PTAB ultimately invalidated RMII's asserted claims. By doing so, the PTAB rendered the claims in this case moot and concluded this Court's subject matter jurisdiction. As a result, this case should be dismissed without prejudice.

Alternatively, Fiserv and NCR are dismissed without prejudice by operation of Rule 41(a)(1) and the claims against Mitek and the Banks should be dismissed without prejudice pursuant to Rule 41(a)(2). No substantive litigation has occurred in this case and defendants would not be prejudiced by dismissal. RMII respectfully requests that this litigation be dismissed in its entirety without prejudice, and for each party to bear its own costs and fees.

| | |
|---|---|
| Dated: September 16, 2016 | STAMOULIS & WEINBLATT LLC |
| | |
| | */s/ Richard W. Weinblatt* |
| | Richard C. Weinblatt #5080 |
| | Stamatios Stamoulis #4606 |
| | Two Fox Point Centre |
| | 6 Denny Road, Suite 307 |
| | Wilmington, DE 19809 |
| | Telephone: (302) 999-1540 |
| | Facsimile: (302) 762-1688 |
| | weinblatt@swdelaw.com |
| | stamoulis@swdelaw.com |
| | myer@swdelaw.com |
| | |
| | *Of Counsel*: |
| | Michael W. Shore* |
| | Alfonso Garcia Chan* |
| | Andrew M. Howard* |
| | **SHORE CHAN DEPUMPO LLP** |
| | 901 Main Street, Suite 3300 |
| | Dallas, TX 75202 |
| | Telephone: (214) 593-9110 |
| | Facsimile: (214) 593-9111 |
| | mshore@shorechan.com |
| | ahoward@shorechan.com |
| | achan@shorechan.com |
| | |
| | * Admitted Pro Hac Vice |
| | **ATTORNEYS FOR PLAINTIFF** |
| | **ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC** |