**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 14-617-GMS |
| MITEK SYSTEMS, INC., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 14-1142-GMS |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., NCR CORPORATION and MITEK SYSTEMS, INC., | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 14-1143-GMS |
| CITIGROUP INC., CITIBANK, N.A., NCR CORPORATION and MITEK SYSTEMS, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 14-1144-GMS |
| WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., FISERV, INC. and MITEK SYSTEMS, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

1

## DECLARATION OF MICHAEL W. SHORE

I, Michael W. Shore, hereby declare as follows:

1.   I am a founder of and partner in Shore Chan DePumpo LLP and lead counsel for Plaintiff Rothschild Mobile Imaging Innovations, LLC ("RMII") in the above-captioned cases. I am more than 21 years old, and am competent to make this declaration. All of the statements set forth herein are true and correct and are based on my personal knowledge or a reasonable investigation of records sufficient to support the statements.

2.   On June 26, 2014, our local counsel was contacted by Ryan Smith of Wilson Sonsini Goodrich & Rosati ("WSGR"). Mr. Smith stated he represented defendants Mitek and J.P. Morgan Chase. Mr. Smith and I participated in a call that afternoon to begin to discuss settlement. At that time, RMII had already granted Defendants two stipulations extending their time to answer (D.I. 6, 10). To facilitate settlement discussions, Defendants requested yet another stipulation extending the time to answer or otherwise respond. RMII agreed to extend Defendants' answer deadline to August 15, 2014 (D.I. 12) so that the parties could continue settlement discussions.

3.   I participated in settlement discussions with James Yoon, also of WSGR, through June, July, and August of 2014. During those discussions, the parties attempted to facilitate an in-person meeting between party principals, but were ultimately not successful. A true a correct copy of an email exchange with Mr. Yoon is attached as Exhibit A.

4.   In late August 2014, counsel for RMII became aware of WSGR's prior representation of the inventor of the patents-in-suit and notified Mr. Yoon. *Id.*

5.   On September 9, 2014, Mr. Yoon agreed that "within 30 days of the completion of the settlement conference, assuming the case does not settle, [WSGR would] withdraw from

representing any entity adverse to RMII or Leigh Rothschild." A true a correct copy of an email exchange with Mr. Yoon reflecting this agreement is attached as Exhibit  B.

6.   Throughout the ongoing settlement discussions, Mr. Yoon repeatedly represented that the main barrier to settlement was Mitek's lack of liquidity and inability to pay settlement proceeds. Because we believed Mitek's representations regarding its lack of liquidity, the above-referenced lawsuits were amended to include Mitek's banking partners.

7.   We provided a term sheet on September 24, 2014 with the aim of addressing Mitek's claimed issues regarding liquidity by tying settlement proceeds to capped royalty payments. A true a correct copy of an email exchange regarding this term sheet is attached as Exhibit C. We again requested a meeting location for a settlement conference.

8.   In response to that term sheet, Mr. Yoon called my office and made clear that it would not meet with RMII because its settlement proposal was "beyond the pale" but provided no substantive basis for that position.  As a result of that heated call, I sent an email memorializing that call. A true and correct copy of the email memorializing that call is attached as Exhibit D. Mr. Yoon never responded to or clarified the content in Exhibit D.

9.   Current counsel for Mitek has repeatedly relied upon Exhibit D—despite not being involved in those discussions— to attempt to malign my firm and my client by suggesting that our litigation decisions were borne out of an attempt to harass. That is not true. Our decision to include the bank defendants in this lawsuit was based on two discrete issues: (1) Mitek claimed to us and in its public filings to not have liquidity sufficient to compromise the case; and (2) significant evidence demonstrated that the bank defendants had developmental involvement in creating, marketing, and servicing the accused products. *See* RMII's Opposition to Defendants' Motion to Sever, Stay, and Transfer (D.I. 39, 40) (noting Mitek's claimed net income losses of

$12 million from 2013 and 2014 setting forth evidence of the bank defendants' involvement in development of the accused products).

10. We are a contingency fee law firm. It has never been our practice to multiply cases or make litigation decisions for the purposes of harassment as those choices do not make economic sense for our firm. We repeatedly attempted to settle the above-referenced cases upon reasonable terms, but were unable to do so as a result of Defendants' refusal to participate in any meaningful economic settlement discussions.

I declare under penalty of perjury that the foregoing is true and correct on September 28, 2016.

/s/ Michael W. Shore
Michael W. Shore